## CIRCUIT COURT OF THE CITY OF RICHMOND

Robert H. Anderson

v.

City of Richmond

Case No. LU 174–2

Andrew J. Ford, Jr.

v.

City of Richmond

Case No. LU 175–2

Elliot M. Koslow

v.

City of Richmond

Case No. LU 176–2

Harry W. Pherson, Jr.

v.

City of Richmond

Case No. LU 177–2

William S. Richardson

v.

City of Richmond

Case No. LU 1154–1

April 16, 1992

BY JUDGE ROBERT L. HARRIS, SR.

The issue is identical in each of these grievance appeals so, with the consent of the parties, they will be dealt with together.

Sergeant Robert H. Anderson and Officers Harry E. Pherson, Elliot M. Koslow, Andrew J. Ford, Jr., and William S. Richardson were all assigned to Divisions within the Investigative Operations section of the Richmond Bureau of Police. Such an assignment required them to carry out what are characterized as "detective" duties, entitled them to a salary differential of sixty cents an hour and to be referred to as "Detective" or, in the case of Sergeant Anderson, "Detective Sergeant."

The basic question is whether the involuntary transfer of the complainants from Investigative Operations to Patrol Operations is grievable.

On October 1, 1991, Chief of Police Marty M. Tapscott announced a policy mandating that personnel assigned to the Organized Crimes Division be rotated out of that division after completing six years of service in the division. The announced rationales for this policy included work-related stress and subsequent "burn out" as well as concern over the potential for corruptive influences because of close contact and significant familiarity with known criminals.

As a result of that policy, Chief Tapscott issued Executive Order No. 103 on November 1, 1991, transferring thirteen personnel from Investigative Operations to Patrol Operations and fifteen personnel from Patrol Operations to Investigative Operations. These transfers were to take effect on January 11, 1992. The five complainants were among those transferred from Investigative Operations, and during November, 1991, they initiated grievance proceedings, their right as city employees. Va. Code § 15.1–7.1 (1991 Cum. Supp.); City of Richmond Personnel Rules 8.2.4–8.2.7 (1991).

Under the grievance procedure, either a complainant, or the employer against whom a complaint is filed, may seek a threshold determination by the Director of Human Resources and Employee Relations as to whether the employment action complained of is susceptible to the grievance process. Personnel Rule 8.2.6. On Decem-

ber 19, 1991, the Director of Human Resources notified all parties that the matters involved were not grievable. The complainants appealed that ruling to the Circuit Court of the City of Richmond, as allowed by state law and city personnel policy. Va. Code § 15.1–7.1(I)(2) (1991 Cum. Supp.); City of Richmond Personnel Rule 8.2.7 (1991).

An employee bringing a grievability controversy into the Circuit Court need not "prove" his case. In *Wallace v. Commonwealth*, 10 Va. Cir. 370 (1988), an employee challenged her employment evaluation as arbitrary and capricious. The court noted that the complainant "does not have to *prove* an arbitrary or capricious evaluation, but she must make a showing of at least a *probability* that the evaluation was the product of arbitrary and capricious conduct." *Id.* at 372 (emphasis in original).

Personnel Rule 8.2.4 provides a noninclusive list of employment actions susceptible to the grievance procedure.[1] In the matter before this court, the complainants largely have focused their complaint on the perception that a transfer from "detective" to "patrolman" is a demotion. This is a crucial point for all complainants in that if such a demotion is linked to disciplinary action, it explicitly falls within the contemplation of the grievance procedures. Personnel Rule 8.2.4(i). While the noninclusiveness of the list in Rule 8.2.4 leaves open the possibility that nondisciplinary demotions may also be grievable, the explicit exclusion of most demotions arising from "lack of work,

---

[1] *Definition of Grievance.*—A grievance shall be a complaint or dispute by an employee relating to his employment, including but not necessarily limited to (i) disciplinary actions, including dismissals, disciplinary demotions, and suspensions, provided that dismissals shall be grievable whenever resulting from formal discipline or unsatisfactory job performance; (ii) the application of personnel policies, procedures, rules and regulations, including the application of policies involving ordinances, statutes or established personnel policies, procedures, rules and regulations; (iii) acts of retaliation as a result of utilization of the grievance procedure or participation in the grievance of another employee; (iv) complaints of discrimination on the basis of race, color, creed, political affiliation, age, disability, national origin or sex; and (v) acts of retaliation because the employee has complied with any law of the United States, the Commonwealth or the City; has reported any violation of such law to a governmental authority; or has sought any change in law before the Congress of the United States, the General Assembly of the Commonwealth, or the City Council. Personnel Rule 8.2.4.

reduction in work force, or job abolition," Personnel Rule 8.2.5(vi), reveals that demotions are not per se grievable. However, because the court finds that the employment actions at issue here were not demotions, it is unnecessary to define a grievable demotion.

In support of their contention that they were demoted, the complainants offer not only their own perceptions, but those of peers and colleagues. *See* Plaintiffs' Exhibits 1–5. However, mere perceptions are of little substantive value in defining a demotion. *Cf. Sweeney v. Commonwealth*, 10 Va. Cir. 101, 103 (1987) (court finds non-grievability in the absence of evidence to support "bald assertions of arbitrary and capricious conduct"). Within the employment relationship, where an employee is transferred from one department to another, the mere preference of one position over another, even where attended by greater prestige, does not itself make for a promotion or demotion. *Cf., Zicca v. City of Hampton*, 240 Va. 468, 471, 397 S.E.2d 882, 883 (1990) ("We recognize that a city employee . . . does not have a vested right to remain in a personnel classification indefinitely.").

Beyond the perceptions cited here, the only effect this employment action had on the complainants, other than the change of work duties accompanying any employment reassignment, was a change of work apparel and the loss of a sixty cents per hour differential granted to those police officers assigned "detective duties . . . during the period of such service." City of Richmond Compensation Plan, Art. III, § 25. Indeed, Executive Order No. 110, issued by then Chief of Police Frank S. Duling on November 12, 1983, reflects the Richmond City Council's elimination of the Detective and Detective Sergeant classes as formal police categories. *See* Exec. Order 110, in the Administrative Record.

The record before this court does not indicate that the complainants will suffer a downward change in their position on the Richmond Bureau of Police pay scale. *See* Fire and Police Ranges in the Administrative Record. Such a result would require this court to wrestle with the "grievable demotion" question. However, since this is not the case here, the court finds that the complainants have offered insufficient evidence to challenge the city's position that the employment actions involved were transfers rather than demotions. *See, Condroy v. City of Richmond*, Case No. LR 4002–3 (Nov. 28, 1989).

The complainants alternatively argue that even if the employment actions at issue here were not demotions, they at least were involuntary transfers and as such must be done in accordance with departmental policy. The gravamen of this argument is that the involuntary transfers were not done in the manner required by departmental policy and, therefore, would be grievable as an unfair "application of personnel policies, procedures, rules and regulations . . . ." *See* Personnel Rule 8.2.4(ii). The complainants make this argument by asserting that the transfers involved here fell under Police Policy and Procedure 106–1(II)(B), entitled "Involuntary Transfers." However, a careful reading of that section reveals that it applies to involuntary transfers initiated against specific individuals and originating with a "division Officer-in-Charge." Policy 106.1(II)(B)(1). Under such circumstances, transfers must be based upon "performance criteria and/or as part of a disciplinary disposition." *Id.* at II(B)(1)(a). Such a requirement would presumably place all such transfers within the grievance procedure coverage. *See* Personnel Rule 8.2.4.

In the matters before this court, it was not a "division Officer-in-Charge who desire[d] to have one of his assigned personnel transferred," Policy 106–1(II)(B)(1), but the Chief of Police who initiated a policy change resulting in these involuntary transfers. *See* Organized Crimes Did. Manual, No. 910017, Oct. 1, 1991. Institution of such a policy is within the general power granted to the Chief of Police, under City Charter § 11.04, to "assign all members of the bureau to their respective posts, shifts, details and duties." Richmond City Charter § 11.04. The transfers resulting from the announced policy are specifically authorized by Section II(C) of Policy 106.1. "Although first consideration will be given to those who have expressed a written desire for transfer, *final discretion is given to the Chief of Police, and he may transfer persons not requesting a change of job assignment.*" Policy 106–1(II)(C) (emphasis added). The claimants have argued that this subsection must be read in conjunction with subsection (B) as limiting involuntary transfers by the Chief of Police to those arising from performance or disciplinary matters. The complainants actually move one step beyond that limitation and suggest, at least implicitly, that policy choices made by the Police chief which *result* in involuntary employee transfers are also limited by the same performance/disciplinary criteria as are involuntary transfers made pursuant to subsection (B). Nothing in the

language of the policy suggests such a limitation, and such an interpretation would interfere with the City Charter's empowerment of the Chief of Police to "assign all members of the bureau." City Charter § 11.04. Furthermore, by bringing policy-created transfers within such limiting language, such transfers would arguably fall within the sort of transfers susceptible to grievance proceedings. The grievance proceedings would then be placed in the position of doing what the grievance procedures are explicitly intended not to do. "Nothing in these grievance and appeal procedures is intended to circumscribe or modify the exclusive right of the City to manage the affairs and operation of the City government." Personnel Rule 8.2.5.

Because the court has determined that the employment actions involved in these cases were not demotions, but rather involuntary transfers arising from a policy change effectuated by the Chief of Police, and that the Chief of Police acted within his authority as outlined by the City Charter and departmental policy, the court finds that the transfers of Sergeant Robert H. Anderson and Officers Harry E. Pherson, Elliot M. Koslow, Andrew J. Ford, and William S. Richardson are not matters that may be brought before a grievance hearing.